UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
          :
SECURITIES AND EXCHANGE        :
COMMISSION,                                  :
          :
                        Plaintiff,    :          18-CV-8182 (VSB)
          :
         - against -            :          **OPINION & ORDER**
          :
EMIL BOTVINNIK,                    :
          :
                      Defendant.  :
          :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/2019

Appearances:

Samantha M. Williams
Gregory R. Bockin
S. Yael Berger
Jacqueline O'Reilly
Securities and Exchange Commission
Washington, District of Columbia
*Counsel for Plaintiff*

Michael Bachner
Howard S. Weiner
Bachner & Associates, P.C.
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       The Securities and Exchange Commission ("SEC" or "Plaintiff") brings this action against Emil Botvinnik ("Defendant"), alleging violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder. Before me is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a)(2), and 9(b). For the reasons explained below, Defendant's motion to dismiss is GRANTED IN

PART and DENIED IN PART. Specifically, Plaintiff's claim for unauthorized trading is dismissed without prejudice. Defendant's motion is otherwise DENIED.

I. **Background**[1]

From June 2012 through November 2014, Defendant worked as a registered representative associated with Myers Associates, LP ("Myers"), a brokerage firm in New York, New York. (Compl. ¶¶ 10–11.)[2] Prior to working at Myers, Defendant "worked at 11 different brokerage firms during his 13 years in the securities industry." (*Id.* ¶ 10.) During the time he was employed by Myers, Defendant defrauded five customers (the "Customers") by recommending an investment strategy that was almost certain to lose money. (*Id.* ¶ 12.) For each of the Customers, Defendant recommended a strategy that involved frequent purchases and sales of securities. (*Id.* ¶ 15.) Defendant charged "commissions or markups/markdowns" and other fees on a trade-by-trade basis, without regard to whether the trade lost money or resulted in profits. (*Id.* ¶¶ 16–17.) Defendant "personally set the amounts of the commissions, and had an agreement with Meyers to receive 90% of the commissions that he generated for Meyers." (*Id.* ¶ 17.) During the relevant period, the Customers' turnover ratio and cost-to-equity ratio exceeded industry norms by large margins.[3] (*Id.* ¶¶ 19–21.) For example, although an annual turnover ratio of six or more is considered an indicator of excessive trading, one Customer's turnover ratio during the relevant period was 26.9. (*Id.* ¶¶ 19–20.) Although a cost-to-equity ratio of 20% or

---

[1] The following factual summary is drawn from the allegations contained in Plaintiff's complaint. (Doc. 5.) I assume the allegations in the complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to the Complaint, Jury Trial Demanded, filed September 10, 2018. (Doc. 5.)

[3] "Turnover and cost-to-equity ratios are industry metrics used to measure whether activity in brokerage accounts is excessive. Turnover is the number of times per year a customer's securities are replaced by new securities. The cost-to-equity ratio, also referred to as the break-even ratio, measures the amount the value of the securities in an account has to appreciate annually just to cover trading costs." (Compl. ¶ 19.)

more is considered an indicator of excessive trading, one Customer's cost-to-equity ratio during the relevant period was 150.3%, and the average annualized cost-to-equity ratio for the five Customers was 51.5%. (*Id.* ¶¶ 19–21.)

Although Defendant's proposed trading strategy was highly unlikely to be profitable and was not suitable for any investor—the Customers' investments would have had to achieve annual returns of approximately 31% to 150% just to cover the trading costs associated with Defendant's recommendations—Defendant represented to each Customer that his strategy would be profitable. (*Id.* ¶¶ 29–32.) Defendant also took certain steps to conceal the cost of each transaction from the Customers. (*Id.* ¶¶ 36–39.) Combined, the Customers paid over $5.1 million in commissions, mark-ups, mark-downs, and other trading costs, (*id.* ¶ 22), while Defendant received approximately $3.7 million in compensation, (*id.* ¶ 35).

Defendant also engaged in unauthorized trading on behalf of one of the Customers. (*Id.* ¶¶ 40–44.) Although Defendant was required to obtain authorization prior to each transaction, and although he usually obtained authorization by making phone calls, Defendant made thirty-two trades on six dates on which he made no call to that Customer. (*Id.* ¶¶ 41–44.) In doing so, Defendant failed to inform that Customer about what securities he was purchasing or selling and in what quantities. (*Id.* ¶ 40.)

## II. **Procedural History**

Plaintiff filed this action on September 7, 2018 by filing the complaint ("Complaint"). (Docs. 1, 5.)[4] On November 7, 2018, Defendant filed a motion to dismiss the Complaint, (Doc. 21), with an attached affidavit, (Doc. 21-1), and a memorandum of law in support of the motion,

---

[4] Due to a filing error, the Complaint was refiled on September 10, 2018. (Doc. 5.)

(Doc. 21-2). Plaintiff filed a memorandum in opposition to the motion to dismiss on December 6, 2018. (Doc. 25.) Defendant did not file a reply memorandum.

### III. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

"Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Rule 9(b) requires a securities fraud claim to "state with particularity the

4

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This standard also requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI*, 493 F.3d at 99. "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.*

## IV. Discussion

### A. *Applicable Law*

The SEC alleges that Defendant violated Section 10(b) of the Exchange Act,[5] Rule 10b–5 promulgated thereunder,[6] and Section 17(a) of the Securities Act,[7] "collectively referred to as the

---

[5] Section 10(b) of the Exchange Act states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.

[6] Rule 10b–5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

[7] Section 17(a) of the Securities Act provides:

> It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as

5

antifraud provisions of the federal securities laws." *SEC v. McGinn, Smith & Co.*, No. 1:10-cv-457 (GLS/CFH), 2015 WL 667848, at *7 (N.D.N.Y. Feb. 17, 2015). Section 10(b) and Rule 10b–5 require the SEC to establish that Defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (quoting *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013)). "A false statement was made with the requisite scienter if it was made with the 'intent to deceive, manipulate, or defraud.'" *Id.* (quoting *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012)). The elements of a claim under § 17(a) are "essentially the same" as the elements under § 10(b) and Rule 10b–5. *Id.* (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)). In addition, "the Second Circuit has recognized that the SEC's 'only purpose' in adopting Rule 10b–5 was to make the same prohibitions contained in Section 17(a)—which applies in connection with the '*offer* and sale' of a security—applicable to 'purchasers' of securities as well." *SEC v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011) (quoting *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463 (2d Cir. 1952)).

---

a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

**B.**   *Application*

Plaintiff argues that Defendant engaged in securities fraud by recommending an unsuitable trading strategy and by engaging in unauthorized trading.[8] Defendant argues that the Complaint does not plead these violations with the particularity required by Federal Rules of Civil Procedure 8(a)(2) and 9(b), and that Plaintiff has failed to establish the requisite elements for each violation. I address each alleged violation in turn.

**1. Unsuitability**

The Second Circuit has long recognized unsuitability claims brought under § 10(b), *see Clark v. John Lamula Inv'rs, Inc.*, 583 F.2d 594, 600–01 (2d Cir. 1978), and "treats [them] as a subset of 10b-5(b) misstatement or omission claims," *Robertson v. MetLife Sec., Inc.*, No. 18-1236-cv, 2019 WL 3026775, at *2 (2d Cir. July 11, 2019). To make out an unsuitability claim, a plaintiff must prove:

> (1) that the securities purchased were unsuited to the buyer's needs; (2) that the defendant knew or reasonably believed the securities were unsuited to the buyer's needs; (3) that the defendant recommended or purchased the unsuitable securities for the buyer anyway; (4) that, with scienter, the defendant made material misrepresentations (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities; and (5) that the buyer justifiably relied to its detriment on the defendant's fraudulent conduct.

*Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993). Defendant does not assert that Plaintiff has failed to establish each of these five elements. Indeed, Defendant does not specifically identify and discuss the elements announced in *Brown*. (*See generally* Def.'s Mem.)

---

[8] Defendant explains in detail why Plaintiff has failed to support a claim for fraud based on churning. (Def.'s Mem. 7–12.) Plaintiff concedes that it "does not contend that its Complaint includes a claim for churning." (Pl.'s Opp. 18.) Accordingly, Plaintiff is precluded from advancing any theory of liability based on churning. "Def.'s Mem." refers to the Memorandum of Law in Support of Defendants' [*sic*] Motion to Dismiss, filed in error as an attachment to Defendant's motion to dismiss on November 7, 2018. (Doc. 21-2.) "Pl.'s Opp." refers to Plaintiff Securities and Exchange Commission's Opposition to Defendant's Motion to Dismiss, filed December 6, 2018. (Doc. 25.) To the extent that Defendant advances any arguments that are not specifically addressed in this Opinion & Order, I find those arguments to be without merit.

Instead, Defendant makes a series of vague and disjointed arguments by cherry-picking quotes from several cases, many of which do not support the assertions for which they are cited. (*See id.*) For purposes of this Opinion & Order, I will attempt to match Defendant's arguments to the general elements of a § 10(b) fraud claim, because "[a]nalytically, an unsuitability claim is a subset of the ordinary § 10(b) fraud claim, in which a plaintiff must allege, *inter alia*, (1) material misstatements or omissions, (2) indicating an intent to deceive or defraud [(i.e., scienter)], (3) in connection with the purchase or sale of a security." *Brown*, 991 F.2d at 1031.

### a. Material misstatements or omissions

Defendant argues that Plaintiff fails to allege specifically which statements or omissions by Defendant were misleading with the particularity required by Rule 9(b). (*See* Def.'s Mem. 5–7.) In making this argument, Defendant ignores the Complaint's heading, in bold and underlined text, "**[Defendant] Made Materially False and Misleading Statements to Customers**," above five paragraphs that set forth Defendant's statements that Plaintiff alleges were false or misleading. (*See* Compl. ¶¶ 29–33.) Plaintiff's allegations related to misstatements or omissions are more than adequate.

### b. Scienter

Defendant argues that the unsuitability claim must fail because a "failure to investigate the accuracy of his strategy does not state a claim for fraud unless the strategy that was allegedly not investigated is false." (Def.'s Mem. 12.)[9] Defendant relies on *Abbondante v. SEC*, 209 F. App'x 6 (2d Cir. 2006), where the Second Circuit, in a summary order,[10] affirmed an order from

---

[9] Although it appears that Defendant makes this argument in support of a finding that his statements were not false, the case he relies on, *Abbondante v. SEC*, considered this type of argument as part of its scienter analysis. 209 F. App'x 6, 7 (2d Cir. 2006) (summary order). Regardless, the argument fails.

[10] I note that summary orders do not have precedential value.

8

the SEC, finding that the appellant's "failure to investigate the truth of [his] assertions satisfie[d] the scienter element of section 10(b) and Rule 10b-5." *Id.* at 7. Contrary to Defendant's assertion, the holding did not turn on whether or not the Defendant's strategy was false—it turned on the adequacy of the investigation. *See id.* Moreover, the court in *Abbondante* affirmed liability of the defendant at issue, *id.* at 8, and its analysis and holding actually support denial of Defendant's motion. Brokers like Defendant "owe a special duty of fair dealing to their clients," and when Defendant made a recommendation to the Customers, he "implicitly represent[ed] . . . that he ha[d] an adequate basis for the recommendation." *SEC v. Hasho*, 784 F. Supp. 1059, 1107 (S.D.N.Y. 1992).

Defendant also argues that if "the SEC believes Defendant's due diligence efforts were insufficient, and that this is evidence of scienter, the SEC must provide the Defendant with notice of the specific conduct which it believes was insufficient." (Def.'s Mem. 13.) Defendant relies on a market manipulation case that included no discussion of unsuitability. (*See id.* (citing *SEC. v. Parnes*, No. 01 CIV 0763 LLS THK, 2001 WL 1658275, at *4 (S.D.N.Y. Dec. 26, 2001).) Defendant makes no attempt to identify the particular language in *Parnes* on which he relies,[11] or to explain why any holding in a market manipulation case should apply to this case. Defendant's arguments are not persuasive and I find that Plaintiff has adequately pled scienter.

c. In Connection with the Purchase or Sale of a Security

Finally, Defendant contends that "[g]eneral statements by a broker regarding his ability and skill, made to induce a customer to open an account, are not made 'in connection with' the purchase or sale of a security[,]" and that this principle applies throughout a broker–customer relationship. (Def.'s Mem. 13–14 (citing *McCoy v. Goldberg*, 748 F. Supp. 146, 150 (S.D.N.Y.

---

[11] Defendant's citation directs me to page *14 of the opinion, even though the opinion only has ten pages.

9

1990); *Siegel v. Tucker, Anthony & R.L. Day, Inc.*, 658 F. Supp. 550, 553 (S.D.N.Y. 1987)).) In *McCoy*, Judge William C. Conner found that general statements such as "clients always enjoyed complete safety and a high return," did not "pertain to the value or quality of any specific securities purchased." *See McCoy*, 748 F. Supp. at 150. However, Judge Conner went on to explain that, although "self-praising business solicitation, taken alone, would not support plaintiff's securities claim," the broker's omissions regarding the high risk of investments that were "subject to payments of undisclosed excessive commissions and other payments" were "sufficiently related to the purchase of the recommended security to be 'in connection with' such for purposes of Section 10(b)." *Id.* at 150–51. Plaintiff makes substantially similar allegations here, (*see, e.g.*, Compl. ¶ 32), and so adequately alleges that the misrepresentations were in connection with the purchase or sale of securities.

### 2. Unauthorized Trading

It is well established that "claims under Rule 10b–5 arise when brokers purchase or sell securities on their clients' behalf without specific authorization." *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 323 (2d Cir. 2002). However, unauthorized trading "is not actionable under [Rule 10b–5] absent deception." *Manela v. Garantia Banking Ltd.*, 5 F. Supp. 2d 165, 174 (S.D.N.Y. 1998); *see also Hasho*, 784 F. Supp. at 1110 ("Unauthorized trades are illegal when accompanied [by] deception, misrepresentation or non-disclosure . . . ." (internal quotation marks omitted)).

Defendant argues that Plaintiff's allegations for unauthorized trading should be dismissed because: (1) the allegations are not pled with particularity; (2) the allegations are speculative; and (3) Plaintiff does not allege deceptive conduct in addition to the alleged unauthorized trading. (*See* Def.'s Mem. 14–16.)

Defendant's first argument, that Plaintiff "must plead the specific stocks that it alleges were purchased or sold without customer authorization, in which accounts, on which dates[,]"(Def.'s Mem. 14), fails because "the SEC is simply not required at the pleading stage to list each and every specific trade" in order to meet the pleading requirements of Rule 9(b). *SEC v. Blech*, No. 99 CIV. 4770(RWS), 2000 WL 288263, at *3 (S.D.N.Y. Mar. 20, 2000). The Complaint alleges the specific dates on which Defendant made unauthorized trades, and the number of trades made on each of those dates. (Compl. ¶ 44.)

Defendant's second argument, that "the absence of a call by [Defendant] to the customer on the day of a trade does not rule out that the trade was discussed with the customer during a previous call the day before, or that the customer called [Defendant]." (Def.'s Mem. 14.) This is nothing more than speculation. In any event, Defendant will have the opportunity to prove these alternative explanations, but they are not "so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs*, 647 F.3d at 430.

Finally, with regard to Defendant's argument that Plaintiff fails to allege deceptive conduct that is distinct from the alleged unauthorized trading, Plaintiff asserts that it has pled that the unauthorized trading was accompanied by deception because Defendant "concealed from Customer 2 that he was . . . effecting trades in the account, the identity of the securities he purchased, and the quantity of securities he purchased on their behalf." (Pl.'s Opp. 18.) Specifically, Plaintiff alleges that Defendant "engaged in deceptive conduct by trading on behalf of one customer without obtaining the customer's approval or informing the customer of material facts about the trading such as what securities [Defendant] was purchasing or selling and in what quantities." (Compl. ¶ 40.) Plaintiff fails to explain why the failure to provide this information prior to purchase/sale is not part and parcel with the unauthorized trading itself. In support of its

11

argument, Plaintiff relies on opinions from the SEC. (*See* Pl.'s Opp. 18 (citing *In re Piontek* (Comm'n Op.), Exchange Act Release No. 34-48903, 81 SEC Docket 2451, 2003 WL 22926821 (Dec. 11, 2003); *In re Muth* (Comm'n Op.), Exchange Act Release No. 34-52551, 86 SEC Docket 956, 2005 WL 2428336, at *37 (Oct. 3, 2005)).) Plaintiff asserts, without discussion, that "many courts have considered opinions of the Commission." (*Id.* at 8 n.1.) As an initial matter, Plaintiff arguably waived this argument by inappropriately raising it in a footnote. *See Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 574 n.1 (2d Cir. 2010) (summary order) ("Generally, we deem an argument raised only in a footnote as waived."); *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 7, 2007) ("Arguments which appear in footnotes are generally deemed to have been waived."). In any event, Plaintiff offers no explanation for why the particular SEC opinions on which it relies are entitled to any level of deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); or any other deference doctrine. In other words, Plaintiff fails to engage in the rigorous analysis necessary to demonstrate that the SEC opinions it relies on are entitled to deference, and if so, how much deference they are entitled to. *See Skidmore*, 323 U.S. at 140 (explaining that the level of deference owed to an agency's interpretation depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control").

Accordingly, Plaintiff's claims for unauthorized trading are dismissed without prejudice.

## V. <u>Conclusion</u>

For the reasons stated above, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's claim for unauthorized trading is dismissed without prejudice. Defendant's motion is otherwise DENIED.

If Plaintiff wishes to amend the Complaint, it shall seek leave to do so no later than three weeks after the entry of this Opinion & Order. Any motion for leave to amend shall attach a copy of the proposed amended complaint. If Plaintiff files a motion for leave to amend, Defendant shall respond to the motion no later than two weeks after the motion is filed. Plaintiff shall submit any reply in support of the motion no later than one week after Defendant's response is filed. If Plaintiff does not seek leave to amend, Defendant shall file an answer to the Complaint within six weeks of the entry of this Opinion & Order. The Clerk of Court is respectfully directed to terminate the open motion at Document 21.

SO ORDERED.

Dated: September 29, 2019
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge